UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:07-CV-254

JUSTO SUAREZ                                                        PLAINTIFF

V.

PETE GEREN,
ACTING SECRETARY OF THE ARMY                        DEFENDANT

<u>MEMORANDUM OPINION AND ORDER</u>

This matter is before the Court upon a motion to dismiss and/or for summary judgment by the Defendant. The Plaintiff, Justo Suarez ("Suarez"), has alleged that the Defendant violated Title VII of the Civil Rights Act by failing to promote him because of his race. Fully briefed, this matter is ripe for decision. For the following reasons, the Defendant's motion to dismiss is **GRANTED in part** and **DENIED in part** and the Defendant's motion for summary judgment is **DENIED**.

## I. FACTS

Plaintiff Suarez, an Hispanic male, began his career in security in 1986 as a military policy investigator for the United States Army in Germany. He then worked as Security Assistant and a Security Specialist Officer for the Civil Service in Germany. In September 2002, he transferred from Germany to Fort Knox as a Plans/Force Protection Specialist. He was assigned to act as the assistant to Fort Knox's Force Protection Officer, Frank Diaz. Six months after he arrived, Fort Knox's Antiterrorism Unit was divided into two units - one that handled physical security and was controlled by Law Enforcement Command ("LEC") and another that handled personnel security and was controlled by the Installation Operations Center ("IOC"). At the time of the reorganization, the Plaintiff was assigned to the LEC and Officer Diaz was transferred to the IOC.

In the fall of 2003, Mr. Diaz resigned. At that time, the Plaintiff discussed the possibility

that he would take over Mr. Diaz's position within the IOC with Ken Boeglen, the Deputy Direction of Plans, Training, Mobilization and Security ("DPTMS").  According to the Plaintiff, on October 6, 2003, he accepted an offer from Mr. Boeglen  to "detail" him to the position with the understanding that the position would become his in due course. Mr. Boeglen contends that he actually offered the position to the Plaintiff on that day but that the Plaintiff declined his offer because he did not want the extra responsibilities. (DN 11, Attach. 19, Transcript of EEOC Hearing, 11/22/05, p. 159).

In any event, Mr. Diaz's position was officially announced as vacant on January 27, 2004. Several individuals, including the Plaintiff, applied  for the position. Mr. Boeglen, the selecting official, appointed two individuals to rate the resumes submitted for the position based on the criteria he provided.  The individual ultimately selected for the job, Mr. James L. Moody, a Caucasian male, received a score of 66;  the Defendant received a score of 49.  Based on the results of this resume rating system, Mr. Moody was selected for the position.  The Plaintiff claims that learned  he had not been selected for the position via email on February 17, 2004.  On April 1, 2004, he filed a formal complaint of discrimination based on race with the Equal Employment Opportunity Commission ("EEOC"). The EEOC conducted an investigation but found no evidence of discrimination.

The Plaintiff also claims that following the filing of his EEO complaint, he was  retaliated against by the Defendant.

## II. ANALYSIS

### A. Motion to Dismiss

The Defendant first argues that the Plaintiff's discrimination and retaliation claims should

be dismissed for failure to exhaust his administrative remedies.[1]

### 1. Legal Standard

Upon a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6),

> the court  must construe the complaint in the light most favorable to plaintiffs, accept all well-pled factual allegations as true and determine whether plaintiffs undoubtedly can prove no set of facts consistent with their allegations that would entitle them to relief.  Kottmyer v. Maas, 436 F.3d 684, 688 (6th Cir. 2006). Though decidedly liberal, this standard does require more than bare assertions of legal conclusions. Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 361 (6th Cir. 2001). Plaintiffs' obligation to provide the "grounds" of their entitlement to relief requires more than labels and conclusions or a formulaic recitation of the elements of the cause of action. Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007). The factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief. Id. at 1965. To state a valid claim, a complaint must contain either direct or inferential allegations respecting all the material elements to sustain recovery under some viable legal theory. Id. at 1969.

LULAC v. Bredesen, 2007 FED App. 0341P, *5-6 (6th Cir. 2007).

### 2. The "October" Discrimination Claim

The Sixth Circuit has stated that "[i]n permitting federal employees to sue under Title VII, Congress conditioned the government's waiver of sovereign immunity upon a plaintiff's satisfaction of 'rigorous administrative exhaustion requirements and time limitations.'" McFarland v. Henderson, 307 F.3d 402, 406 (6th Cir. 2002)(quoting Brown v. Gen. Servs. Admin., 425 U.S. 820, 833 (1976)). The applicable requirement here states that an "aggrieved person must initiate contact with an [EEO] Counselor within 45 days of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. §1614.105(a)(1). However, "because exhaustion requirements pursuant to Title VII are not jurisdictional

---

[1]The Defendant also argues that any claim not brought pursuant to Title VII of the Civil Rights Act should be dismissed because "Title VII is the exclusive and preemptive judicial remedy for claims of discrimination in federal employment." (DN 4, Defendant's Memorandum, p. 8). Because the Plaintiff concedes as much, the Court **GRANTS** this portion of the Defendants' motion to dismiss. (DN 11, Plaintiff's Response, p. 14).

prerequisites, they are subject to waiver, estoppel, and equitable tolling." <u>McFarland</u>, 307 F.3d at 406 (quoting <u>Zipes v. Trans World Airlines, Inc.</u>, 455 U.S. 385, 393 (1982)).

As part of his discrimination claim, the Plaintiff contends that he was discriminated against, not only on February 13, 2004, when he learned that he not been selected for promotion to Force Protection Specialist, but also on October 6, 2003, when he was not "detailed" for the promotion. He claims that from October 2003 through February 2004, he was the victim of continuous, unlawful, and intentional discrimination. (DN 3, ¶ 9). The Defendant argues that the Plaintiff's discrimination claim in relation to the October incident should be dismissed because the Plaintiff did not file an EEO complaint within 45 days after that incident occurred and because the EEO complaint he eventually did file concerned only his February 13, 2004 non-selection.

In support of its argument for dismissal of the October discrimination claim, the Defendant relies upon the Supreme Court's opinion in <u>AMTRAK v. Morgan</u>. 536 U.S. 101 (2002). In <u>Morgan</u>, the Court held that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the [45]-day time period after the discrete discriminatory act occurred." <u>Id</u>. at 113.

The Plaintiff seems to make two separate arguments in response. His first argument seems to be based on estoppel. He argues that because his claim of discrimination based upon the October incident was fully investigated and litigated before the EEOC, he should not now be precluded from raising it. The evidence does not support the Plaintiff's contention that his October claim was fully investigated and litigated before the EEOC. The Plaintiff's "Formal Complaint of Discrimination" states that he was discriminated against because of race in February 2004 when he was not selected for the promotion he sought - Force Protection Specialist. (DN 4, Attach. 11, EEO Complaint). The

EEO then contacted the Plaintiff and agreed to investigate his claim.  (DN 4, Attach. 12, EEO April 14, 2004 Letter). The letter identified the Plaintiff's claim as follows: "On February 17, 2004, you discovered by reading an email message from Mr. Boeglen that you were not selected for Force Protection Specialist, GS-0301-12, that you applied under [a] vacancy announcement..." (Id.).  The letter then stated:

> If you believe the claim in this complaint has not been correctly identified, please notify me, in writing, within 5 calendar days after you receive this letter, and specify why you believe the claim has not been correctly identified.  If you fail to contact me, I will conclude you agree that the claim has been properly identified above.

(Id.). The Plaintiff never responded and the EEOC proceeded with the investigation of the above-identified claim. Finally, on May 22, 2006, the EEOC issued a final agency decision in which it affirmed the agency's final order finding that the Defendant had not been discriminated against on the basis of race when he not selected for promotion on February 17, 2004.  (DN 5, Final Agency Decision).  Thus, the Court rejects the Plaintiff's argument that the Defendant should be estopped from claiming that the Plaintiff has not exhausted his administrative remedies in relation to the discrimination that allegedly occurred at the Plaintiff's October 2003 meeting with Mr. Boeglen.

The Plaintiff next seems to argue that his claim related to the October 2003 meeting is actionable because it is part of a continuing violation claim. The Sixth Circuit has held that "where there is an ongoing, continuous series of discriminatory acts, they may be challenged in their entirety as long as one of those discriminatory acts falls within the limitations period." Haithcock v. Frank, 958 F.2d 671, 677 (6th Cir. 1992); see also Havens Realty Corp. v. Coleman, 455 U.S. 363 (1982). In Haithcock, the court held that a plaintiff could bring a continuing violation claim in federal court, even though one was not expressly raised before the EEOC, as long the Plaintiff had "alleged the facts which comprised the continuing violation" in his EEOC complaint. Id.  Here, however, the

Plaintiff's EEOC complaint does not allege any set of facts which could comprise a continuing violation claim.   To the contrary, the EEOC complaint clearly alleges one discrete act of discrimination - the failure of the Defendant to promote the Plaintiff in February 2004.

In support of its argument, the Plaintiff also cites to <u>Randolph v. Ohio Dept. of Youth Services</u>, in which the Sixth Circuit stated that the exhaustion requirement is not meant to be "overly rigid" and that an EEOC complaint "should be liberally construed to encompass all 'claims reasonably expected to grow out of the charge of discrimination.'"   <u>Randolph v. Ohio Dept. of Youth Services</u>, 453 F.3d 724 (6th Cir. 2006)(quoting <u>Haithcock v. Frank</u>, 958 F.2d 671, 675 (6th Cir. 1992)). However, in <u>Randolph</u>, the court held that the district court's decision to dismiss claims arising out of events that occurred prior to the discrimination date alleged in the EEOC complaint was improper *because the Plaintiff was making a hostile work environment claim* and  "not making a separate claim for actions prior to that date." 453 F.3d at 732.

Thus, the Court concludes that the Plaintiff's claim of discrimination arising out of his October 6, 2003 meeting with Mr. Boeglen should be dismissed for failure to exhaust administrative remedies. The Court notes, however, that the Plaintiff may still use prior acts, such as his October 6, 2003 meeting, as background evidence to support his timely discrimination claim arising out of his non-selection in February 2004. <u>AMTRAK v. Morgan</u>, 536 U.S. at 113.

### 3. The Retaliation Claim

The Plaintiff also alleges that he was retaliated against for filing a discrimination complaint with the EEOC.  He alleges that after he filed his EEO complaint, Mr. Boeglen retaliated against him by making derogatory and unfounded comments to his superiors about the quality of his work and his job performance. The Defendant argues that this claim should be also be dismissed for failure

to exhaust administrative remedies since it was never raised before the EEOC.

The Sixth Circuit has held that federal courts have jurisdiction over retaliation claims not filed in an EEOC complaint where the alleged retaliation occurred after the initial EEOC complaint was filed. See, e.g., Abeita v. TransAmerica Mailings, 159 F.3d 246, 254 (6th Cir. 1998). And, although the Defendant argues that the Plaintiff could have included a retaliation claim in his amended EEOC complaint, it has not pointed the Court to a case in which the Sixth Circuit has so required.

Thus, the Court holds that dismissal of the Plaintiff's retaliation claim for failure to exhaust administrative remedies is not warranted.

**B. Summary Judgment**

The Defendant also argues that it is entitled to judgment as a matter of law on both the Defendant's discrimination and retaliation claims. The Court will address each of these arguments in turn.

**1. Legal Standard**

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying the portion of the record which demonstrates the absence of a genuine issue of material facts. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party themselves thereafter must produce specific facts demonstrating that a genuine issue of fact exists for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986).  The Rule requires the non-moving party to present "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  "The mere existence of scintilla of evidence in support of the [non-moving party's] position will be insufficient, there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477. U.S. at 252.  It is against this standard that the court reviews the following facts.

**2. The Discrimination Claim**

To establish a discrimination claim under Title VII, a plaintiff must produce either direct or circumstantial evidence of discrimination. Grizzell v. City of Columbus Div. of Police, 461 F.3d 711, 719 (6th Cir. 2006)(citing DiCarlo v. Potter, 358 F.3d 408, 414 (6th Cir. 2004)).  Direct evidence, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions. Id. (citing Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir. 1999)).  Once the plaintiff produces direct evidence of discrimination, the burden shifts to the employer to show that "it would have taken the employment action even in the absence of discrimination." Id.

If the plaintiff attempts to prove discrimination by circumstantial evidence, courts apply the McDonnell Douglas burden-shifting framework. Id. (citing McDonnell Douglas Corporation v. Green, 411 U.S. 792, 802 (1973)).  Thus, initially, the plaintiff must set forth a prima facie case of discrimination.  To establish a prima facie case of discrimination based on a failure to promote, the plaintiff must show: 1) he is a member of a protected class; 2) he applied and was qualified for the promotion; 3) he was considered for and denied the promotion; and 4) another employee of similar

qualifications who was not a member of the protected class received the promotion. Id. (citing Sutherland v. Michigan Dep't of Treasury, 344 F.3d 603, 614 (6th Cir. 2003)). Once the plaintiff establishes a prima facie case of discrimination, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for its action. Id. at 720. (citing DiCarlo, 358 F.3d at 414). If the defendant meets this burden, the plaintiff must then prove that the legitimate reason offered by the defendant is a mere pretext for discrimination. Id.  A plaintiff establishes pretext by showing that the reason offered by the defendant: 1) has no basis in fact; 2) did not actually motivate the decision not to promote; or 3) was insufficient to warrant the decision not to promote. Id. (citing Zambetti v. Cuyahoga Cmty. College, 314 F.3d 249, 258 (6th Cir. 2002)).

Here, the Plaintiff seeks to establish discrimination through circumstantial evidence.  The Defendant does not dispute that the Plaintiff has established a prima facie case of discrimination. Indeed, the Plaintiff seems to concede that the Plaintiff has established that he is Hispanic; that he applied for the position of Force Protection Specialist; that he was qualified for that position; and that the employee chosen for that position, Mr. Moody, is Caucasian.[2]  Rather, the crux of the Defendant's argument seems to be that it had a legitimate, non-discriminatory reason for not selecting the Plaintiff for the promotion that he sought - namely, that the selectee,  Mr. Moody, was more qualified for the position.  The Defendant points to the Resume Rating Sheets  utilized by the two panel members appointed to rank the applicants based on their resumes. (DN 4, Attach. 6).  The Resume Rating Sheets reveal that the resumes of 36 applicants were ranked based on nine criteria to determine which applicant was most qualified for the position. The panels members gave each

---

[2] The Defendant's argument in this regard is actually somewhat confusing.  The Defendant argument seems only  to address the Plaintiff's October 2003 claim. The Defendant states that the Plaintiff cannot establish a prima facie case of discrimination because "the plaintiff has not established that a personnel action actually occurred in October 2003 as no selection was made for the position at issue until February 2004." (DN 16, Defendant's Reply, p. 7).

applicant a number between 1 and 5 for each criterion based on their resumes and then the numbers were totaled.  The totals of each panel member were then combined.  The applicant who had the highest combined score, Mr. Moody, was selected for the position. This evidence suggests that the Defendant did not select the Plaintiff for the position because he was less qualified than other applicants and that the Defendant, therefore, had a legitimate, non-discriminatory reason for not promoting him.

The burden, thus,  shifts back to the Plaintiff to prove that this legitimate reason offered by the Defendant is a mere pretext for discrimination. Grizzell, 461 F.3d at 719.  As noted above, the Plaintiff may establish pretext by showing that the reason offered by the defendant - that the Plaintiff was less qualified than the selectee - has no basis in fact, did not actually motivate the decision not to promote, or was insufficient to warrant the decision not to promote. Id. (citing Zambetti v. Cuyahoga Cmty. College, 314 F.3d 249, 258 (6th Cir. 2002)).  Although the Plaintiff must come forward with evidence that the Defendant's reason for the employment action is false, he need not present independent evidence that the proffered reason is a pretext for discrimination. Sutherland v. Mich. Dep't of Treasury, 344 F.3d 603, 615 (6th Cir. 2003 ); see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148 (2000) ("[A] plaintiff's prima facie case, combined with sufficient evidence to find the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.")

Here, the gist of the Plaintiff's argument seems to be that Mr. Moody, the individual selected for the position, was in fact not more qualified for the position than the Plaintiff.  He argues that Mr. Moody was selected because the selection process was deliberately skewed for him, and against the Plaintiff, by Mr. Boeglen.  As evidence of this skewing, the Plaintiff contends that the two members of the selection panel were chosen by Mr. Boeglen and were his subordinates; that the criteria used

in the selection process were developed at least in part by Mr. Boeglen and that four of the nine criteria used by the panel to evaluate the applicants have nothing to do with the Force Protection Specialist position; that it was illogical to review only applicant resumes, and not professional evaluations, in the selection process; and that the scores given to the applicants were arbitrary and adjusted so that Mr. Moody would receive the highest score. As evidence of the selection process's flaws, the Plaintiff points out that the panel members gave him a rating of "0" and "1" under the computer skills criterion, even though he taken one of the highest computer courses available, and a "0" under the WMD criterion even though his resume stated that he was "[r]esponsible for developing and testing a comprehensive and detailed...WMD plan." The Plaintiff also points to the testimony of Mr. Diaz, who had previously held the Force Protection Specialist position at issue in this case, in which Mr. Diaz states that, "...in my experience...Mr. Suarez was more qualified for the position than Mr. Moody...[because]...Mr. Suarez...had done work in specifically the security and anti-terrorism program in Europe...and he had set up the program..." (DN 11, Attach. 36, Transcript of EEOC Hearing, p. 242). Finally, as evidence that he was discriminated against based on his race, the Plaintiff points to Mr. Jenkins (one of the panel members) and Mr. Boeglen's testimonies in which they admitted that they that they knew the Plaintiff was not Caucasian. Mr. Jenkins, for example, testified that "the first time I saw [Mr. Suarez] looking through the cameras, I thought he was a Middle Eastern terrorist..." (DN 11, Attach. 14, Ex. 12, Transcript of EEOC Hearing, p. 153). Similarly, Mr. Boeglen  testified  that, "[Mr. Suarez] looks Indian, Pakistani. He could be Saudi Arabian for all I know. I mean he fits all those descriptions." (DN 11, Attach. 13, Ex. 11, p. 60).

Based on the above, the Court concludes that the Plaintiff has produced evidence upon which a reasonable jury could conclude that the Defendant's "asserted justification is false" and could therefore infer that the Defendant unlawfully discriminated against the Plaintiff based on his race.

Thus, the Court holds that the Defendant is not entitled to judgment as a matter of law on the Plaintiff's discrimination claim.

### 3. Retaliation Claim

Mr. Suarez also claims that he was retaliated against by the Defendant for filing an EEO complaint and that this retaliation was in violation of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq. The Sixth Circuit has held that 42 U.S.C. §2000e-3(a) prohibits an employer from retaliating against an employee who has "opposed" any practice by the employer made unlawful under Title VII. Johnson v. University of Cincinnati, 215 F.3d 561, 578 (6th Cir. 2000)(citing Booker v. Brown & Williamson Tobacco Co., 879 F.2d 1034, 1312 (6th Cir. 1989). To establish a claim under §2000e-3(a), the plaintiff must show that 1) she engaged in an activity protected by Title VII; 2) this exercise of protected rights was known to the defendants; 3) defendants thereafter took an adverse employment action against the plaintiff; and 4) there was a causal connection between the protected activity and the adverse employment action. Id. (citing Morris v. Oldham County Fiscal Court, 201 F.3d 784, 792 (6th Cir. 2000)).

The Defendant contends that the Plaintiff cannot establish the last two elements of a prima facie case of retaliation and that it is entitled to judgment as a matter of law on this claim. In his Complaint and in an affidavit, Mr. Suarez alleges that Mr. Boeglen retaliated against him for filing an EEOC action by making derogatory and unfounded comments and sending like emails to Mr. Suarez's superiors regarding Mr. Suarez's work quality and/or job performance which negatively impacted his career and promotion opportunities. (DN 11, Attach. 1, Plaintiff's Affidavit). At this stage of the litigation, the Defendant has failed to show the absence of a genuine issue of fact relating to the elements of the retaliation claim and, thus, summary judgment is not appropriate at this time. After discovery, the record will be more developed and the Defendant may renew its

motion for summary judgment at that time.

### III. CONCLUSION

For the foregoing reasons, the Defendant's motion to dismiss is **GRANTED in part** and **DENIED in part** and the Defendant's motion for summary judgment is **DENIED.  IT IS SO ORDERED.**

cc: Counsel of Record